May it please the Court, my name is Sharon Korda of Dewey and LaBeouf, and I represent the appellant Theodric Van Smith, whose last name, I believe, is Smith, not Van Smith. No, no, it's difficult to figure out from prior filings. Your Honors, this is a case about a former prisoner, now a patient in a California State Mental Hospital, who agreed to act as a witness and informant in a very important investigation being conducted by the State of California Department of Corrections about collusion between prison guards and prisoners. I suppose the main problem you have is in this 1983 action, there's two areas that you have to show. One's the security risk, and then whether or not these particular officers were deliberately indifferent to those risks. Now, assume the risks are there. How were these officers deliberately indifferent to the security risks of your client while he was in prison? Yes, Your Honor, the primary evidence in the record on deliberate indifference comes from a declaration submitted by the appellant's expert in the trial court, Mr. R. G. Brewer. He is a correctional official with or a former correctional official with more than 40 years' experience as a warden and in other capacities. He submitted a lengthy declaration in which he explained what the basis of his conclusion that there was deliberate indifference was. And I would direct the Court's attention to appellant's excerpts of record beginning on page 351. And I'm just going to read very briefly from them, because this is the crux of this important question about deliberate indifference. Since the defendants did not and the defendants, Franklin and Renoso, were the two California Department of Corrections agents charged with preserving Mr. Smith's safety. Since the defendants did not have a plan for protecting much attention to his continued incarceration after his release on parole, I consider it their professional obligation to get the CDC hierarchy to intercede with both the sheriff's office in Los Angeles and the state hospital in Atascadero, where Smith was subsequently confined. This is especially If I understand correctly, this is after he's all through his federal custody. Yes, he was picked up under the state because of his mental problems of attacking children and things. Well, apparently. And so he's sent to Atascadero. Apparently. And so the argument is that these federal officers should have done more in Atascadero to keep him safe. Yes. And while he was in the Los Angeles County Jail, which is where he was housed prior to being sent to Atascadero. Okay. This is especially. There's some vague ones. What is the authority, what is the ability of the federal officers to control conditions in these non-federal venues? Well, according to our expert, Mr. Brewer, the situation is less formal than it might appear. That is, Mr. Brewer concluded that they did have the ability to assure his protection outside the California prison system. And this is what he said. We've read what he said. But my question is, and I understand you can read it back, my concern was having dealt both with CDC and the state court and the federal, CDC doesn't take kindly to others trying to tell it how to run its correctional facilities. There's sort of an assumption here that had the defendants gone to CDC or gone to higher ups, it seems to me that's mostly speculation that they could have tried to get something done. But there's no assurance it would have been done, nor is it any reference to anything that would require CDC or the state authorities to respond and do whatever was recommended from the federal, from the defendants. Well, Your Honor, first off, we're not talking about CDC officials. The appellees in this case worked for the CDC. The problems arose after the appellant left the institutions run by the CDC and went to one run by the county of Los Angeles and another run by the California Department of Mental Health, that is the state hospital at Etoska, New York. Here's my problem. No matter what the state of mind of these particular defendants, I don't understand how they, what they don't do can amount to deliberate indifference when the person isn't in their custody or subject to their control in any way. Yes, I understand the question. Mr. Brewer opined that these two agents were respected by the CDC headquarters staff, whom they worked for, and should have and could have gotten, as he put it, top-level intervention on Smith's behalf. But the question in a 1983 case is not whether they could have done more. They have to have been deliberately indifferent. There has to be evidence that they were deliberately indifferent. Not negligent or not insufficiently enthusiastic advocates. How does this evidence meet that standard? I believe the conclusion of Mr. Brewer is that the record taken as a whole shows that the few efforts that they did make, and we concede that they did do a few things after the appellant left CDC custody, that is, they made phone calls and they wrote letters, that under the circumstances, and the circumstances were extremely dangerous because another person who had also cooperated in this investigation was murdered, so. Well, wait a minute. Let me understand the whole record. I mean, the transfer to Calpatria, the transfer to Corcoran, going into ADSEG. I think he was even in WITSEG for a while. Mostly at his request. And all of that got done. Isn't that, doesn't that show there was not indifference, but they were trying to do things at his request? Well, Mr. Brewer, our expert, opined at the trial level that what they were doing was, as he put it, haphazard. That is, the defendant was transferred among several different institutions. But my question is, let's assume if a defendant is transferred at his request and believes he will be safer, for example, in ADSEG, at Corcoran, or WITSEG, or Calpatria, or wherever that may be, and they do that and he's not safe, whose fault is that? I mean, they were trying, it seems like they were trying to comply with what the defendant wanted to do in terms of protecting himself. And many times I would agree that it's the prisoners who have the best feeling for where they're going to be safe. This was not, the record indicates that this was not what the defendant wanted. What the defendant wanted was to be in federal custody. And that was what was done for several other witnesses and informants in the same investigation. The record also indicates that the appellant consented in writing to being housed in federal custody. And that the reason that did not happen, according to Mr. Brewer, the expert, was that the appellees did not advocate that. So to return to Judge Graber's question about what could they, what could the appellees have done once Mr. Smith was out of CDC custody and in the L.A. County Jail and in the federal custody and in the Atascadero State Mental Hospital. Our evidence in the record is that he, that the appellees could have and should have gotten the high-level CDC officials to intercede with the people who ran the L.A. County Jail and the Atascadero State Mental Hospital to provide him with a safer environment, either by agreeing to put him in federal custody or segregating him from the general population in a way that was not done. Thank you, Counsel. You have a little while left if you want to say anything. I think I'd like to reserve it for rebuttal. Thank you. We'll hear from Mr. Roost. Good morning. And may it please the Court, Deputy Attorney General Kenneth Roost for Defendants,      Defense shows that Franklin and Reynoso always took affirmative and reasonable action to address the safety concerns of Smith. Smith admits, I would tell Franklin and or Reynoso about my safety concerns, and while with the Department of Corrections, they would arrange for a transfer. Defendants' responsibility for Smith's safety must end at some point, and the logical one is when Smith had served out his criminal sentence and was no longer under the jurisdiction of the Department of Corrections, the employer for Franklin and Reynoso. Nevertheless, Smith still contacted Franklin and Reynoso when he was later retained in civil confinement at L.A. County Jail and thereafter at Atascadero State Hospital, renewing safety concerns. And despite having no power, Franklin and Reynoso contacted these institutions' authorities to explain Smith's concerns and ask that he be given some form of special in single-celled housing, administrative segregation at L.A. County Jail, and he was also single- celled at Atascadero. Now, again, the defendant's responsibility for Smith's safety must end somewhere. And by May 2002, Franklin and Smith, Smith was no longer providing federal testimony. He no longer spoke with Franklin and Smith. They had no relationship. And yet this entire time in civil confinement, Smith was never touched. We simply ask this court to affirm the district court's decision that there is no constitutional violation here. And unless the court has any questions, we'll rest on the pleadings at this point. I don't think we have any questions. Ms. Korda, do you have rebuttal? Yes. Well, Mr. Roost just characterized the appellee's behavior as reasonable. As the court is well aware, the controlling precedent on deliberate indifference is the Supreme Court's decision in Farmer v. Brennan. In Farmer v. Brennan, the Supreme Court majority wrote, a prison official's duty under the Eighth Amendment is to ensure reasonable safety. Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the cruel and unusual punishment clause. So what it all boils down to is, did Franklin and Renoso act reasonably in taking the steps they took or not or failing to take the steps that they didn't take? We contend that they did not act reasonably, that under these extremely dangerous circumstances, as our expert opined, they should have and could have gotten the high-level intervention of their superiors to intercede with the people who ran the other institutions where Mr. Smith was confined and should not have relied on occasional phone calls and letters to protect him. The result of their not doing that was that he is now unable to eat anything other than alcohol and still bears the scars of that second episode. And there I will conclude, unless the Court has any questions. Thank you, Counsel. The case just argued is submitted, and I want particularly to thank Counsel for participating in the pro bono representation project. It's very, very helpful to the Court that lawyers are willing to do that, and we appreciate it very much.
judges: Wallace, Graber, Schiavelli